IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. Crystal Stewart, as next of friend of ECJ, a minor, </br></br>        Plaintiff,</br></br>v.</br></br>1. GMRI, Inc., d/b/a Cheddars Scratch Kitchen,</br></br>        Defendants. | )</br>)</br>)</br>)</br>)</br>)</br>) Case No. 18-cv-00331-GKF-FHM</br>)</br>)</br>)</br>)</br>)</br>) JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** Plaintiff, Crystal Stewart, as next of friend of ECJ, a minor ("Plaintiff), by and through her attorneys of record Rex W. Thompson, Melvin Hall, and Donald M. Bingham, of Riggs, Abney, Neal, Turpen, Orbison & Lewis, and files this Complaint against Defendant, GMRI, Inc., d/b/a Cheddar's Scratch Kitchen ("Cheddar's" or "Defendant"). In support of this Complaint, Plaintiff states as follows:

### PRELIMINARY STATEMENT

1. This action arises under the provisions of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq*,. Plaintiff is seeking declaratory relief, injunctive relief, and damages to address the deprivation of her rights from discrimination due to her sex (female), sexual harassment, and retaliation by her employer after she reported the discrimination and sexual harassment.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's civil action arises due to violations of federal law.

3. Pursuant to 28 U.S.C. § 1391, venue is properly laid in this district because the Plaintiff resides in the district; Defendant conducts substantial, systematic, and continuous activity in this district; is subject to personal jurisdiction in this district; and because all of the acts underlying this lawsuit occurred in this district.

## PARTIES

4. Plaintiff, Crystal Stewart ("Crystal") is the custodial parent of ECJ. ECJ, at all times pertinent hereto, was and is a female under the age of 18 and a citizen of the United States and the State of Oklahoma. Crystal and ECJ, at the time of the incidents giving rise to the cause of action, were residents of Tulsa, Tulsa County, Oklahoma, and this judicial district. ECJ was employed with Cheddar's at the time of the discrimination, sexual harassment, and retaliatory acts of the Defendant.

5. Defendant is a foreign for profit business corporation, incorporated under the laws of the State of Florida doing business in the State of Oklahoma with more than 500 employees. Defendant GMRI, Inc. was previously known as General Mills Restaurant Group, Inc. and General Mills Restaurant's, Inc. GMRI, Inc. continues that type of business by owning and operating Cheddar's Scratch Kitchen at 10708 East 71st South in Tulsa, Oklahoma, in this judicial district. Defendant is an employer as defined by Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et seq.

## EXHAUSTION OF CONDITIONS PRECEDENT

6. Within 300 days of the discriminatory conduct outlined in the Complaint, Plaintiff filed a charge of discrimination with the EEOC alleging discrimination based on her sex (female), sexual harassment, and retaliation.

7. Plaintiff, on or about March 28, 2018, received a right to sue letter from the Oklahoma City office of the EEOC, entitling her to proceed with this civil action within 90 days of the date of the receipt of said notice. This action is being initiated within 90 days of Plaintiff's receipt of the notice of right to sue.

## STATEMENT OF THE CASE

8. ECJ was employed as a host by Defendant on April 11, 2017. ECJ went through a very brief new employee orientation, lasting less than two hours. The orientation consisted simply of ECJ being placed in front of a computer for approximately two hours in the manager's office at the Tulsa location. ECJ was advised by management to initial on the computer for the handbook and other policies. The management at Cheddar's knew, or should have known, this process was insufficient to properly advise its employees of the content of the numerous policies, especially based upon the diverse and young employees it hires. ECJ also states the management was more interested in explaining the job duties than the employee training.

9. ECJ states that shortly after her hiring, each time she would enter the kitchen area to perform her assigned duties, the male staff would make "cat calls," look at her in inappropriate ways, like "up and down her body," leers, and make sexually inappropriate comments about her body and how she was dressed. The majority of the kitchen staff were older Hispanic males. The manager's office is located in the kitchen, and the managers were aware of the actions of the male staff.

10. ECJ told a co-worker, RL (also a minor), who recommended her for the position, about how she was being treated, and RL told her to just ignore the "offensive

conduct." ECJ was not advised by RL or anyone else, to report the harassment to management.

11. On May 12, 2017, late on a Friday evening around 11:00 p.m., when ECJ was working the last shift, an incident happened that she could not ignore. A significantly older male cook, Gerardo Espinoza ("Espinoza"), came out of the men's restroom, grabbed her by the arm, pulled her to him, and forcibly kissed her on the lips, even inserting his tongue in her mouth. She was fearful of what he was trying to do to her, and even feared that he would pull her into the restroom and continue his assault. Espinoza stopped the assault only when another male employee came out of the restroom.

12. As soon as Espinoza released ECJ, she immediately returned to her host work station in the front of the restaurant. She immediately reported the sexual assault to a co-worker, B, LNU (last name unknown), a minor, and RL, who said to report what happened to the manager on duty, Jesse, LNU (last name unknown). He said, "You should have smacked him!" Jesse, LNU (last name unknown) then said he would talk to the employee. After a very short time, Jesse LNU (last name unknown) returned and told ECJ that he gave Espinoza a "strike." Strikes are disciplinary actions issued to employees for minor violations of policy or procedures of Cheddar's.

13. On May 13, 2017, ECJ told her mother, Crystal, about the sexual assault. Crystal and ECJ contacted the Tulsa Police Department and reported the incident. Crystal also attempted to talk to the manager on duty, Jesse, LNU (last name unknown), to find out more about how Cheddar's was going to handle the matter, but was advised he was unavailable. Crystal then advised the individual answering the telephone for the employer that ECJ would not be in to work that day and requested information about how ECJ should

notify Cheddar's; and, through its computer application, by logging on and opening up a scheduled shift for others to cover, ECJ did that for her Saturday shift only.

14.  On May 15, 2017, Crystal contacted the General Manager, Bill Barwig ("Barwig").  During the telephone conversation with Crystal, he admitted the "strike" was not the appropriate way to handle a serious issue like sexual harassment.  He admitted the manager on duty, Jesse, LNU (last name unknown) was young and inexperienced and handled the matter inappropriately.  In fact, Jesse, LNU (last name unknown) failed to even notify Barwig of the incident.  Barwig said he would have to get corporate involved.  He also advised ECJ could stay off work.  When ECJ visited the computer app again, she noticed she had been taken off the schedule completely.

15.  Defendant, instead of removing the attacker, Espinoza, from the work schedule, continued to improperly keep the victim from returning to work.  Several non-retaliatory actions could have been chosen, which would not have harmed the victim, including, but not limited to, having Espinoza and ECJ work different shifts, or having Espinoza remain off work.  Instead, Cheddar's took the adverse personnel action of removing ECJ from its schedule.

16.  During this entire process of investigating the sexual assault, ECJ has been continuously victimized and re-victimized by the Defendant. She promptly gave a statement the night the incident occurred to her fellow co-workers and Jesse, LNU (last name unknown); Crystal then gave the statement to Defendant during the Barwig telephone conversation on May 15, 2017; on May 16, 2017, Barwig arranged a meeting at the restaurant in public and asked ECJ to tell him in detail again what happened. Barwig asked questions of the victim like, "Had you done anything to illicit this type of behavior?" and

other inappropriate questions in an area which was not private and in which it was likely that others could overhear the conversation. Barwig then asked her to put the details in writing and email it to him. ECJ was never interviewed by anyone at corporate HR or by anyone with appropriate training to conduct these types of investigations.

17. Espinoza did not provide a written statement about the assault until May 26, 2017, two weeks after the incident. Based upon the handwriting on the statement, it appears that someone other than Espinoza wrote the statement and he signed it. In Espinoza's statement, he admits to touching and kissing ECJ.

18. Apparently, the Defendant fired Espinoza sometime after the statement containing the admissions was finally given to the employer. However, the Defendant did not notify ECJ that the investigation had concluded or that it had confirmed that Espinoza had committed the conduct described by ECJ, or that she could return to work. Defendant had ECJ's contact information, including her email, and also had Crystal's contact information.

19. On June 19, 2017, Crystal emailed Cheddar's because it had been more than a month since ECJ had provided the multiple statements. The email states as follows:

> On May 12, 2017, my daughter (ECJ) was assaulted during her shift at you (sic) establishment. I understand my daughter was placed on leave due to the need for separation throughout this investigation, but she is the victim so I would like to confirm that she is on paid leave. I would also like to request a copy of your investigative leave policy.

20. On June 21, 2017, when Crystal received no response, she called and asked to speak with Barwig. Crystal was advised that he was on vacation again. The manager

on duty, Laney, LNU (last name unknown) then confirmed the above-referenced email was received and advised she would forward the email to the corporate office. She then referred Crystal to the corporate office.

21. On June 21, 2017, Crystal then contacted the corporate office and was advised that she needed to talk to Heather Helton, Human Resources Director. Crystal was sent to her voicemail. She immediately called back, only to be advised that Heather Helton was the only employee in Human Resources and again she had to talk to her. When Crystal did request an update, Ms. Helton seemed unaware of the status of the investigation. Ms. Helton advised that she would contact Barwig to discuss it with him and get back in contact with Crystal.

22. On June 22, 2017, Ms. Helton advised Crystal the investigation had been completed three weeks before and that Barwig stated he had telephoned ECJ three times to tell her the investigation had been concluded, and "everything had been taken care of." During the conversation, Crystal advised Ms. Helton that no telephone calls were received by either her or ECJ. Crystal inquired about ECJ's time off work during the investigation and whether ECJ would receive pay for her time off, which was required by an investigation of conduct which victimized ECJ. Toward the end of the conversation, Ms. Helton interrupted Crystal and asked for her daughter's name. Ms. Helton asked for this name even though Crystal had left several message before with Ms. Helton, which included the daughter's name. Crystal, and other employees of the Defendant, had sent several emails just days before with ECJ's name, and Ms. Helton had just stated that she was told by Barwig the day before that he had contacted ECJ and advised her the investigation was concluded.

23. Plaintiff asserts that Defendant's policies, negligent training, and negligent investigation of the May 12, 2017 sexual assault, sexual harassment, and retaliation caused ECJ additional harm.

24. The effect of the practices complained of above has been to deprive ECJ of equal employment opportunities and otherwise adversely affected her status as an employee, because of her sex and in retaliation for her opposition to the discriminatory practices.

25. The unlawful employment practices complained of above were intentional.

26. The unlawful employment practices complained of above were done with malice or with reckless indifference to ECJ's federally protected rights.

27. ECJ has been injured by the actions and inaction of the Defendant by allowing and/or creating a hostile work environment to exist that was "severe and pervasive."

## COUNT I
## GENDER-BASED DISCRIMINATION
## IN VIOLATION OF TITLE VII

28. Plaintiff incorporates by reference, as if fully restated, all of the previous allegations.

29. Defendant has engaged in intentional, unlawful employment practices, and policies in violation of 42 U.S.C. § 2000e et seq. The discriminatory practices include, but are not limited to, allowing a work place environment to exist that allowed ECJ to be discriminated against based upon her sex, specifically, allowed her to be sexually harassed.

30. ECJ has been damaged as a result of the actions of Defendant.

## COUNT II
## RETALIATION IN VIOLATION OF TITLE VII

31. Plaintiff incorporates by reference all previous allegations.

32. Defendant has engaged in intentional, unlawful employment practices, and policies in violation of 42 U.S.C. § 2000e *et seq*. The retaliatory practices include, but are not limited to, not allowing ECJ to return to work, but allowing the individual that sexually assaulted her to continue to work up to his date of termination, requiring ECJ to repeatedly relive the events by requiring not one rendition by her of the shocking event, but requesting her to relive the event at least three other times, one in a booth in the restaurant where the incident occurred while the restaurant was open for business.

33. Plaintiff further asserts that Defendant lied to the EEOC investigator, Rafael Tirado, in its position statement, and to Plaintiff during the investigatory process, and other above-mentioned actions.

34. Plaintiff has been damaged as a result of the actions of Defendant.

### PRAYER FOR RELIEF FOR COUNT I AND COUNT II

**WHEREFORE**, Plaintiff seeks to recover against Defendant:

a. Declaratory relief declaring that Defendant's conduct toward ECJ was discriminatory and retaliatory in violation of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e *et seq*.

b. Actual damages in the form of back pay, lost wages, and reimbursement for medical costs.

c. Compensatory damages for pain, emotional distress, physical illness,

humiliation, and embarrassment emanating from Defendant's conduct and treatment of ECJ.

    d.    Injunctive relief requiring Defendant to reinstate ECJ to her former position, and, at a minimum, to implement written policies and procedures to prevent gender-based discrimination, sexual harassment, and retaliation against individuals such as ECJ, who complain about gender-based discrimination and are retaliated against for doing so.

    e.    Punitive damages for Defendant's willful and wanton deprivation of ECJ's federally protected civil rights.

    f.    Reasonable attorney fees and court costs, as well as such other relief as the Court deems appropriate.

    Respectfully submitted,

/s/ Rex W. Thompson
Rex W. Thompson, OBA No. 13122
Donald M. Bingham, OBA No. 794
Melvin C. Hall, OBA No. 3728
RIGGS, ABNEY, NEAL, TURPEN,
 ORBISON & LEWIS
502 West 6th Street
Tulsa, OK 74119
918-587-3161 - Telephone
918-587-9708 - Fax
Email: rthompson@riggsabney.com
ATTORNEYS FOR PLAINTIFF

**ATTORNEY'S LIEN CLAIMED**